1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSEPH VINCENT WARD,                     No.  2:21-cv-2220 DAD KJN P

12                 Petitioner,

13        v.                                  FINDINGS AND RECOMMENDATIONS

14   SUZANNE M. PEERY,

15                 Respondent.

16

17        Petitioner is a state prisoner, proceeding pro se, with a fully exhausted petition for writ of

18   habeas corpus under 28 U.S.C. § 2254.  Petitioner challenges his 2018 conviction for murder.

19   This case was briefed and submitted for decision on March 17, 2022.  Subsequently, on January

20   9, 2023, petitioner filed a motion for stay and abeyance under Rhines v. Weber, 544 U.S. 269,

21   276 (2005).  Petitioner also filed a motion to compel discovery.  As discussed below, the

22   undersigned recommends that both motions be denied.

23   Motion for Stay and Abeyance

24        Legal Standards

25             Exhaustion of State Court Remedies

26        The exhaustion of state court remedies is a prerequisite to the granting of a petition for

27   writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  A petitioner satisfies the exhaustion requirement

28   by providing the highest state court with a full and fair opportunity to consider each habeas claim

                                           1

1    before presenting it to the federal court.  Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton

2    v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).  The prisoner must "fairly present" both the

3    operative facts and the federal legal theory supporting his federal claim to the state's highest

4    court, "thereby alerting that court to the federal nature of the claim."  Baldwin v. Reese, 541 U.S.

5    27, 29 (2004); see Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003), overruled on other

6    grounds by Robbins v. Carey, 481 F.3d 1143 (9th Cir. 2007).  The United States Supreme Court

7    has held that a federal district court may not entertain a petition for habeas corpus unless the

8    petitioner has exhausted state remedies with respect to each of the claims raised.  Rose v. Lundy,

9    455 U.S. 509 (1982).

10                         Stay and Abeyance

11        Petitioner's pursuing petitions containing both exhausted and unexhausted claims (a

12   "mixed" petition) or petitions containing fully unexhausted claims may seek stays where (i) "the

13   petitioner has good cause for his failure to exhaust," (ii) "his unexhausted claims are potentially

14   meritorious," and (iii) "there is no indication that the petitioner engaged in intentionally dilatory

15   litigation tactics."  Rhines, 544 U.S. at 277-78; Mena v. Long, 813 F.3d 907, 912 (9th Cir. 2016)

16   (noting that a district court has the discretion to stay and hold in abeyance both partially and fully

17   unexhausted petitions under the circumstances set forth in Rhines).

18        On the other hand, where a petitioner seeks to stay a fully exhausted petition, a stay under

19   Rhines is not available.  Jackson v. Roe, 425 F.3d 654, 661 (9th Cir. 2005); Wright v. Gastello,

20   2020 WL 5356697, *2 (C.D. Cal. June 25, 2020) (collecting district court cases finding Rhines

21   stay inapplicable to fully exhausted petitions).  Rather, under such circumstances, a petitioner

22   may seek a Kelly stay using the following process:  (1) the court stays and holds in abeyance the

23   fully exhausted petition, allowing petitioner the opportunity to return to state court to exhaust the

24   unexhausted claims; and (2) petitioner later moves to amend his petition and reattaches the newly

25   exhausted claims to the original petition.  Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003).  This is a

26   more cumbersome procedure than a Rhines stay because it requires petitioner to file an amended

27   federal habeas petition, but it does not require petitioner to show good cause for the failure to

28   exhaust.  See King v. Ryan, 564 F.3d 1133, 1140 (9th Cir. 2009), cert. denied, 130 S. Ct. 214

                                      2

1    (2009).  However, because the filing of a federal petition does not toll the statute of limitations, a

2    Kelly stay does nothing to protect a claim from being barred by the statute of limitations unless

3    the new claim shares a "common core of operative facts" with the claims raised in the original

4    petition.  Mayle v. Felix, 545 U.S. 644, 659 (2005).  In other words, any newly exhausted claims

5    a petitioner seeks to add to a pending federal habeas petition must be timely or relate back to

6    claims contained in the original petition that were exhausted at the time of filing.  See King, 564

7    F.3d at 1143.

8              The Parties' Arguments

9              In the instant petition, petitioner claims that the jury's verdict finding him competent to

10   stand trial was not supported by substantial evidence.  (ECF No. 1 at 6.)  Petitioner seeks to stay

11   this case pending exhaustion of the following seven new claims:  ineffective assistance of counsel

12   for failure to investigate; inadequate evidence to convict; prosecution investigator is known to

13   fabricate false evidence; failure to provide a sixty day speedy trial; violation of petitioner's Sixth

14   Amendment rights; failure of trial court to grant two Marsden motions; and failure to "honor

15   established judicial procedures."  (ECF No. 19 at 3-6.)

16             Petitioner's Motion

17             Petitioner claims there is good cause for his delay, based on the ineffectiveness of

18   appellate counsel by failing to investigate, discover and present such claims on direct appeal.  In

19   addition, due to COVID-19, petitioner was continuously on modified program and quarantine and

20   not allowed access to the law library.  Further, petitioner was transferred to Corcoran State

21   Prison, put in quarantine, and deprived of his personal and legal property for six weeks.  The

22   Corcoran library was only open two days a week.  Petitioner argues that all seven of his putative

23   claims are potentially meritorious.  (ECF No. 19 at 3-7.)  Petitioner contends he has not engaged

24   in any intentional or dilatory delay tactics; he gathered as much information as possible and "filed

25   his petition for writ of habeas corpus as promptly as possible."  (ECF No. 19 at 7.)

26             Respondent's Opposition

27             Respondent counters that petitioner is not entitled to a stay under Rhines because the

28   instant petition is wholly exhausted, and petitioner is not seeking to preserve the timeliness of

1   claims already asserted in the instant petition.  Further, petitioner could not amend to include the

2   proposed new claims because such claims are untimely.  Petitioner filed no collateral actions in

3   state court, and the statute of limitations period expired on October 10, 2022.  Additionally, the

4   proposed new claims do not relate back to petitioner's pending challenge to the jury's

5   competence finding because they have nothing to do with the competency proceedings or the

6   evidence supporting the jury's competency finding.  (ECF No. 19 at 3-7.)

7   Respondent argues that petitioner fails to show good cause for his extreme delay in

8   bringing the motion more than a year after he filed the instant petition, and his failure to

9   commence state collateral review by April 25, 2023, all constitutes intentional delay.  Petitioner

10   knew what appellate counsel included in the direct appeal when appellant's opening brief was

11   served on petitioner on January 8, 2020 (ECF No. 11-2 at 61), yet petitioner has not commenced

12   state collateral review for over three years.  Despite his complaints of COVID-19 and the

13   incidents of prison life, petitioner has effectively litigated this case yet still waited over a year to

14   file his motion attempting to include seven new claims.  Nevertheless, generalized complaints

15   about the incidents of prison life fail to demonstrate good cause.  (ECF No. 22 at 4) (citing

16   Palmero v. Robertson, 2020 WL 4674279, at *2 (E.D. Cal. Aug. 12, 2020) (allegations

17   concerning modified program for law-library access based on COVID-19 were insufficient to

18   show good cause when prisoner failed to show he could not access the library at all).  Finally,

19   petitioner's prior motion to stay demonstrates his awareness of the exhaustion requirement, yet he

20   still has not filed a petition in state court.  Such additional lengthy delay shows petitioner is

21   intentionally dilatory.

22   Petitioner did not file a reply.

23   Discussion

24   As discussed above, and argued by respondent, because the original petition raises only an

25   exhausted claim, petitioner is not entitled to a stay under Rhines.  Jackson, 425 F.3d at 661.

26   Because the sole claim in the petition is exhausted, the petition is not a "mixed" petition.  Thus, a

27   stay pursuant to Rhines is not appropriate.  See Jackson, 425 F.3d at 661 (explaining that "Rhines

28   applies to stays of mixed petitions" -- not "fully exhausted petitions").

1    Nevertheless, district courts have discretion to stay proceedings when confronted with a

2    petition that contains only exhausted claims.  Kelly, 315 F.3d at 1071; see also King, 564 F.3d at

3    1140-41 ("A petitioner seeking to use the Kelly procedure will be able to amend his unexhausted

4    claims back into his federal petition once he has exhausted them only if those claims are

5    determined to be timely.  And demonstrating timeliness will often be problematic under the now-

6    applicable legal principles.").  Moreover, if the federal statute of limitations has already expired, a

7    petitioner may amend a new claim into a pending petition "only if the new claim shares a

8    'common core of operative facts' with the claims in the pending petition."  King, 564 F.3d at

9    1141 (quoting Mayle, 545 U.S. at 659).  A new claim "does not relate back (and thereby escape

10   AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that

11   differ in both time and type from those the original pleading set forth."  Mayle, 545 U.S. at 650.

12          Are Petitioner's New Claims Time-Barred?

13          Respondent argues that it would be futile to grant petitioner a stay because the proposed

14   new claims are barred by the statute of limitations.  Petitioner did not address the timeliness issue

15   or file a reply.[1]

16          1. Legal Standards

17          A Kelly stay may be denied where the petitioner's new claims are deemed to be untimely

18   and do not relate back to exhausted claims.  King, 564 F.3d at 1141-42.

19          The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposed a statute

20   of limitations on petitions for a writ of habeas corpus filed by state prisoners which provides:

21           A 1-year period of limitation shall apply to an application for a writ
             of habeas corpus by a person in custody, pursuant to the judgment of
22           a State court.  The limitation period shall run from the latest of –

23           (A) the date on which the judgment became final by the conclusion
             of direct review or the expiration of the time for seeking such review;
24

25           (B) the date on which the impediment to filing an application created
             by State action in violation of the Constitution or laws of the United
26           States is removed, if the applicant was prevented from filing by such
             State action;

27   _____

[1] Plaintiff was provided the standards for seeking a Kelly stay in the April 3, 2023 order.  (ECF
28   No. 18 at 4.)

5

1    (C) the date on which the constitutional right asserted was initially
     recognized by the Supreme Court, if the right has been newly
2    recognized by the Supreme Court and made retroactively applicable
     to cases on collateral review; or
3
     (D) the date on which the factual predicate of the claim or claims
4    presented could have been discovered through the exercise of due
     diligence.
5

6    28 U.S.C. § 2244 (d)(1).

7            2.   Discussion

8        Petitioner was convicted on August 1, 2018.  (ECF No. 11-11 at 156 (CT 546).)  He filed

9    a petition for review in the California Supreme Court, which was denied on May 12, 2021.  (ECF

10   No. 11-8.)  Petitioner then had 150 days to file a petition for writ of certiorari in the United States

11   Supreme Court, which expired on Sunday, October 10, 2021.[2]  Because the deadline fell on a

12   Sunday, petitioner had until Monday, October 11, 2021, but did not file a petition for writ of

13   certiorari.  See Fed. R. Civ. P. 6(a)(1)(C) (when last day of period falls on Saturday, Sunday, or

14   legal holiday, period continues to run until end of next day that is not Saturday, Sunday, or legal

15   holiday).  The AEDPA limitations period began running the next day, October 12, 2021, and

16   expired on Wednesday, October 12, 2022.[3]  See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th

17   [2]  Normally, a petitioner has 90 days after the California Supreme Court denied review to file a
     petition for certiorari in the U.S. Supreme Court.  See Zepeda v. Walker, 581 F.3d 1013, 1016
18   (9th Cir. 2009) ("The period of direct review after which a conviction becomes final includes the
     90 days during which the state prisoner can seek a writ of certiorari from the United States
19   Supreme Court.")  However, "the U.S. Supreme Court temporarily extended the time to file a
     petition for writ of certiorari from 90 to 150 days for any deadline falling after March 19, 2020."
20   Parker v. Johnson, 2023 WL 2558547, *7 (C.D. Cal. Jan. 13, 2023), citing see U.S. Sup. Ct.
     Order, Mar. 19, 2020, https://www.supremecourt.gov/orders/ordersofthecourt (rescinded July 19,
21   2021); see also (ORDER LIST: 589 U.S.); (ORDER LIST: 594 U.S.).

22
     [3]  Petitioner does not contend that he is entitled to a later trigger date under § 2244(d)(1)(B), (C),
23   or (D), and no such basis is apparent in the record.  Indeed, the nature of petitioner's proposed
     new claims are based on facts known to petitioner at least by the end of his trial.  See Hasan v.
24   Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (limitation period begins running when petitioner
     knows or through diligence could have discovered important facts, not when he recognizes their
25   legal significance).  Also, petitioner does not rely on any state-created impediment.  Under
     § 2244(d)(1)(B), the state action must be a violation of the Constitution or laws of the United
26   States.  See 28 U.S.C. § 2244(d)(1)(B); Mack v. Alves, 578 F. Supp. 3d 154, 157 (D. Mass. Dec.
27   30, 2021) (argument that COVID-19 prevented access to the library was not a state-created
     impediment that violated the Constitution or laws of the United States).  In addition, "[t]o obtain
28

                                          6

1    Cir. 2001) (holding that AEDPA limitation period begins running day after triggering event).

2    Therefore, absent tolling, petitioner's proposed new claims would be time barred if petitioner

3    attempted to amend the instant petition and add the proposed new claims.

4                              Statutory Tolling

5            Title 28 U.S.C. § 2254(d)(2) provides for tolling where the prisoner properly files a state

6    post-conviction application.  Here, however, petitioner filed no collateral actions in state court.

7    Also, petitioner is not entitled to any tolling for the period during which his current petition has

8    been pending.  See Duncan v. Walker, 533 U.S. 167, 180-81 (2001) (federal habeas petition does

9    not toll limitation period because it is not "application for State post-conviction or other collateral

10   review" within meaning of § 2244(d)(2)).  Therefore, petitioner is not entitled to any statutory

11   tolling and the limitations period expired on October 12, 2022.

12                              Equitable Tolling

13           Neither party addressed whether equitable tolling applies.  Equitable tolling of the statute

14   of limitations is appropriate when the petitioner demonstrates "(1) that he has been pursuing his

15   rights diligently, and (2) that some extraordinary circumstance stood in his way."  Holland v.

16   Florida, 560 U.S. 631, 645 (2010).  It is petitioner's burden to demonstrate that he is entitled to

17   equitable tolling.  Espinoza-Matthews v. California, 432 F.3d 1021, 1026 (9th Cir. 2005).

18           An "extraordinary circumstance" has been defined as an external force that is beyond the

19   prisoner's control.  Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).  "The diligence required

20   for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'"

21   Holland, 560 U.S. at 653 (internal citations and additional quotation marks omitted).  In addition,

22   petitioner must demonstrate that the "'extraordinary circumstances' were the cause of his

23   untimeliness."  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003), quoting Stillman v.

24   _____

25   relief under § 2244(d)(1)(B), the petitioner must show a causal connection between the unlawful
     impediment and his failure to file a timely habeas petition."  Bryant v. Arizona, 499 F.3d 1056,

26   1060 (9th Cir. 2007) (lack of access to case law during the relevant time period was not an
     impediment for purposes of statutory tolling because it did not prevent [the petitioner] from filing

27   his petition.").  The petitioner must satisfy a "higher bar than that for equitable tolling" to qualify
     for the relief provided under § 2244(d)(1)(B).  Ramirez v. Yates, 571 F.3d 993, 1000 (9th Cir.

28   2009).

                                             7

1    LaMarque, 319 F.3d 1199, 1203 (9th Cir. 2003) ("petitioner entitled to equitable tolling 'since

2    prison officials' misconduct proximately caused the late filing.'").  "Each of the cases in which

3    equitable tolling has been applied have involved wrongful conduct, either by state officials or,

4    occasionally, by the petitioner's counsel."  Shannon v. Newland, 410 F.3d 1083, 1090 (9th Cir.

5    2005), cert. denied, 546 U.S. 1171 (2006) (emphasis in original).

6         "The threshold necessary to trigger equitable tolling . . . is very high, lest the exceptions

7    swallow the rule."  Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (internal citations and

8    quotations omitted).  Equitable tolling is "a very high bar and is reserved for rare cases."  Yeh v.

9    Martel, 751 F.3d 1075, 1077 (9th Cir. 2014).

10        Here, the record demonstrates that petitioner has not been diligent in attempting to raise

11   the proposed new claims.  As pointed out by respondent, petitioner was served a copy of appellate

12   counsel's opening brief on appeal on January 8, 2020, which demonstrated counsel only pursued

13   the competency claim.  (ECF No. 11-2 at 61.)  Despite such knowledge, petitioner has not

14   commenced state collateral review for over three years.  Further, even though petitioner first

15   moved to stay this action on January 9, 2023, showing his awareness of the exhaustion

16   requirement, petitioner has still not filed a petition for writ of habeas corpus in state court almost

17   four months later.  Such additional delay suggests he is intentionally delaying the pursuit of the

18   proposed new claims in state court.

19        As to extraordinary circumstances outside his control, petitioner fares no better.

20        First, petitioner's generalized statement that COVID-19 kept him "on modified program

21   continuously and quarantined and was not allowed access to the law library," does not warrant

22   equitable tolling.  (ECF No. 19 at 2.)  Petitioner provides no specific dates or documentation

23   confirming such modified program or explaining what the modified program entailed.  Such a

24   generalized allegation concerning COVID-19's impact is insufficient to justify equitable tolling.

25   See Cervantes v. Cisneros, 2022 WL 4082488, at *5 (C.D. Cal. July 28, 2022) (petitioner's

26   generalized allegations concerning COVID-19's effect on access to law library were insufficient

27   to warrant equitable tolling), accepted by 2022 WL 4088064 (C.D. Cal. Sept. 6, 2022); Edgin v.

28   Covello, 2021 WL 4355333, at *4-5 (N.D. Cal. Sept. 24, 2021) (same); Sauceda-Contreras v.

1   Spearman, 749 F. App'x 500, 502 (9th Cir. 2018) (affirming district court's dismissal of petition

2   as untimely when petitioner "failed to support his conclusory assertions" with actual evidence);

3   Jackson v. Evans, 286 F. App'x 516, 516 (9th Cir. 2008) (holding that "only vague allegations"

4   that petitioner had been denied access to prison library did not warrant equitable tolling when he

5   failed to show that such restrictions proximately caused delay in filing federal petition).

6            Moreover, while petitioner claims he was not allowed access to the law library, he does

7   not demonstrate that he was unable to access the library's materials by other methods, such as a

8   prison paging system, or that those methods were inadequate.  See, e.g., Sholes v. Cates, 2021

9   WL 5567381, at *5 (E.D. Cal. Nov. 29, 2021) (holding that COVID-19 restrictions did not

10  warrant equitable tolling as general matter and observing that availability of prison paging system

11  showed that petitioner could access library materials at all relevant times); report and

12  recommendation adopted, 2022 WL 4072862 (E.D. Cal. Sept. 2, 2022); Palmero, 2020 WL

13  4674279, at *2 (allegations concerning modified program for law library access based on

14  COVID-19 were insufficient to establish good cause when prisoner failed to show he could not

15  access library at all), accepted by 2020 WL 5701928 (E.D. Cal. Sept. 24, 2020).

16           Second, petitioner claims that upon his transfer to Corcoran State Prison, he was put in

17  quarantine and deprived of all of his property, including legal property, for six weeks, and the

18  Corcoran law library was only open two days a week.  (ECF No. 19 at 2.)  However, petitioner

19  provided no dates -- he does not state when he was transferred to Corcoran or what date his legal

20  property was returned to him.  (Id.)

21           A petitioner may be entitled to equitable tolling if the petitioner can demonstrate that

22  external forces not the lack of diligence was the cause of the late filing.  Miles, 187 F.3d at 1107.

23  "[P]etitioner must [] show that the extraordinary circumstances were the cause of his untimeliness

24  and that the extraordinary circumstances made it impossible to file a petition on time."  Ramirez

25  v. Yates, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotation marks and citations omitted)

26  (explaining that "a complete lack of access to a legal file may constitute an extraordinary

27  circumstance"); Espinoza-Matthews, 432 F.3d at 1028 (finding pro se habeas petitioner was

28  ////

1    entitled to equitable tolling because despite his diligence he was deprived of his legal papers for

2    11 months of the one-year AEDPA limitations period.).

3          The instant court record reflects that petitioner filed a change of address to Corcoran on

4    June 21, 2022.  (ECF No. 13.)  Petitioner's filing was not dated, and he does not indicate the date

5    of his transfer.  However, even if the six week deprivation began on June 21, 2022, it would have

6    ended on Tuesday, August 2, 2022, leaving petitioner seventy days in which to bring his claims to

7    federal court.  See Gray v. Zatecky, 865 F.3d 909, 912-13 (7th Cir. 2017), cert. denied, 2018 WL

8    692446 (U.S. 2018) (holding petitioner was not entitled to equitable tolling based on a 113-day

9    delay in receiving his case records from the state court and limited access to the institution's law

10   library; he still had 43 days after he received his case files from the state court to file his federal

11   petition and, although he had restricted access to legal resources during this period, "he did not

12   make as compelling a showing" as the prisoner in Socha v. Boughton, 763 F.3d 674 (7th Cir.

13   2014), "who was almost totally deprived of meaningful library access because of his placement in

14   administrative segregation").  Unlike the prisoner in Espinoza-Matthews, petitioner was deprived

15   of his legal property for six weeks, and it was not the last six weeks of the limitations period.

16   Thus, granting petitioner equitable tolling for the six week period would not render his proposed

17   new claims timely.

18          Relation Back

19          Because the proposed new claims are untimely, petitioner must show that each claim

20   relates back to his properly filed claim in order to include the putative claim in any amended

21   petition.  See Mayle, 545 U.S. at 655 (citing Fed. R. Civ. P. 15(c)); Nguyen v. Curry, 736 F.3d

22   1287, 1296 (9th Cir. 2013), abrogated on other grounds by Davila v. Davis, 137 S. Ct. 2058

23   (2017).  A new claim does not "relate back" to the filing of an exhausted petition simply because

24   it arises from "the same trial, conviction, or sentence."  Mayle, 545 U.S. at 662-64.  Rather, it

25   must share a "common core of operative facts" with a timely claim in the pending petition.  Id. at

26   664.  Therefore, an amended petition "does not relate back (and thereby escape AEDPA's one-

27   year time limit) when it asserts a new ground for relief supported by facts that differ in both time

28   and type from those the original pleading set forth."  Id. at 650.  The "time and type" language in

1   <u>Mayle</u> refers "not to the claims, or grounds for relief" but "<u>to the facts that support those</u>

2   <u>grounds</u>." <u>Nguyen</u>, 736 F.3d at 1297 (emphasis in original).

3            In the instant petition, petitioner raises only one claim:  the jury verdict finding petitioner

4   competent to stand trial was not supported by substantial evidence.  (ECF No. 1 at 6.)  As argued

5   by respondent, none of the seven new claims proposed by petitioner "have anything to do with the

6   evidence supporting the jury's competency finding, or apparently anything to do with the

7   competency proceedings."  (ECF No. 22 at 4, citing ECF No. 3-7.)  Analysis of petitioner's

8   proposed new claims --

9   - ineffective assistance of counsel for failure to investigate a
10   recording of witnesses, not objecting to the second interview
    of petitioner by detectives; and failing to remove Deputy
    Mackey who was impeached for his reputation of
11   incompetence, fabrication and dishonesty;

12   - inadequate evidence to convict because no murder weapon
    was found, and no witness testimony connected petitioner
13   with the crime;

14   - prosecution investigator is known to fabricate false evidence;

15   - failure to provide a sixty day speedy trial;

16   - trial court knowingly allowed deliberately elicited statements
    elicited by detectives to be used against petitioner in violation
17   of his Sixth Amendment rights;

18   - failure of trial court to grant two <u>Marsden</u> motions; and

19   - failure to "honor established judicial procedures" related to
    the court's failure to let detectives testify about the interview
20

21   --will not rely on any of the facts reviewed for petitioner's competency claim.  Indeed, all of

22   petitioner's proposed new claims are unrelated to petitioner's challenge to the jury's competency

23   verdict.[4]

24   ////

25

26   [4]  Although petitioner claims that his trial was delayed by the competency proceedings,
    mentioned in putative claim four, evaluation of whether or not petitioner's speedy trial rights
27   were violated would not require an evaluation of facts related to the issue of whether or not
    petitioner was competent to stand trial.
28

1    Because petitioner's proposed new claims are untimely and do not relate back to

2    petitioner's one exhausted claim, a motion for stay under Kelly should also be denied.  See, e.g.,

3    Lopez v. Tampkins, 2018 WL 6038325, at *3 (C.D. Cal. Sept. 28, 2018) ("Because petitioner's

4    unexhausted claims [in mixed petition] are already barred by the statute of limitations, staying the

5    action to permit him to seek amendment in the future would be futile."); Labon v. Martel, 2015

6    WL 1321533, at *8 (C.D. Cal. Mar. 17, 2015) (finding Kelly stay futile where unexhausted

7    claims were untimely and did not relate back to exhausted claims in mixed petition); Spivey v.

8    Gipson, 2013 WL 4517896, at *9 (E.D. Cal. Aug. 26, 2013) (recommending denial of Kelly stay

9    when addressing motion to amend to add unexhausted claims to fully exhausted petition,

10   construed as a motion for stay, finding Spivey's proposed new claims were untimely and would

11   not relate back to exhausted claims.), report and recommendation adopted, 2013 WL 5671635

12   (E.D. Cal. Oct. 17, 2013); Broadnax v. Cate, 2012 WL 5335289, at *12 (S.D. Cal. Oct. 26, 2012)

13   (denying Kelly stay of fully exhausted petition where proposed and currently unexhausted claims

14   already time barred).

15   Motion to Compel Discovery

16   Petitioner seeks a court order requiring the production of all of the discovery presented by

17   the district attorney in petitioner's underlying criminal case, F17-000213, including an alleged

18   secret tape recording of four witnesses interviewed by Nevada County Sheriff's Deputy Mackey,

19   seven to eight hours long, which petitioner claims "has exculpatory evidence." (ECF No. 20 at

20   2.)  Respondent opposes the motion, arguing that all new evidence is barred by 28 U.S.C.

21   § 2254(d), and petitioner must first exhaust the claims he seeks to support with such new

22   evidence in state court as well as seek to develop such evidence in state court.  Further,

23   respondent objects that petitioner seeks such discovery from a nonparty, the Nevada County

24   prosecutor.  As discussed below, petitioner's motion should be denied.

25   Although a habeas proceeding is a civil suit, a habeas petitioner "does not enjoy the

26   presumptive entitlement to discovery of a traditional civil litigant." Rich v. Calderon, 187 F.3d

27   1064, 1068 (9th Cir. 1999), cert. denied, 528 U.S. 1092; Bracy v. Gramley, 520 U.S. 899, 904

28   (1997) (stating that unlike other civil litigants, a habeas corpus petitioner is not entitled to broad

12

1  discovery).  Rule 6(a) of the Rules Governing § 2254 Cases permits discovery "only in the

2  discretion of the court and for good cause shown."  Rich, 187 F.3d at 1068.  Rule 6(b) further

3  provides that "[a] party requesting discovery must provide reasons for the request."  Rule 6(b), 28

4  U.S.C. foll. § 2254.

5      Further, AEDPA "restricts the ability of a federal habeas court to develop and consider

6  new evidence."  Shoop v. Twyford, 142 S. Ct. 2037, 2043-44 (2022).  "Review of factual

7  determinations under [28 U.S.C.] § 2254(d)(2) is expressly limited to "the evidence presented in

8  the State court proceeding."  Shoop, 142 S. Ct. at 2043-44.  A court considering a habeas corpus

9  petition is ordinarily limited to the state court record.  See Cullen v. Pinholster, 563 U.S. 170, 180

10  (2011) (holding that "review under § 2254(d)(1) is limited to the record that was before the state

11  court that adjudicated the claim on the merits").

12      If the petitioner "failed to develop the factual basis of a claim in State court proceedings,"

13  this court may admit new evidence only in two limited situations.  28 U.S.C. § 2254(e)(2).  The

14  claim must rely on a "new" and "previously unavailable" "rule of constitutional law" made

15  retroactively applicable by the Supreme Court, or it must rely on "a factual predicate that could

16  not have been previously discovered through the exercise of due diligence."  28 U.S.C.

17  § 2254(e)(2)(A).  In addition, even if the petitioner can satisfy one of those two exceptions,

18  petitioner must also show that the desired evidence would demonstrate, "by clear and convincing

19  evidence," that "no reasonable factfinder" would have convicted petitioner of the charged crime.

20  § 2254(e)(2)(B).

21      Initially, the undersigned agrees with respondent that petitioner should not be granted

22  leave to conduct discovery on unexhausted claims.  Calderon v. U.S. Dist. Court for the Eastern

23  Dist. of California (Sacramento), 113 F.3d 149 (9th Cir. 1997).

24      Nevertheless, the undersigned reviewed the record in this matter and determined that

25  petitioner failed to demonstrate good cause.  Petitioner does not claim that he is relying on a "new

26  and previously unavailable rule of constitutional law."  Shoop, 142 S. Ct. at 2044.  Petitioner does

27  not allege that his petition or his proposed new claims rely on "a factual predicate that could not

28  have been previously discovered through the exercise of due diligence."  Id.  Indeed, petitioner

13

1  provided documents demonstrating that the evidence was disclosed to the defense by June of

2  2018, prior to trial.  (ECF No. 20 at 9-12.)  Petitioner also offered no specific facts showing that

3  the requested evidence would demonstrate, by clear and convincing evidence, that no reasonable

4  factfinder would have convicted petitioner of second degree murder.

5        Accordingly, petitioner's discovery motion should be denied.

6        In accordance with the above, IT IS HEREBY RECOMMENDED that:

7        1.  Petitioner's motion for stay (ECF No. 19) be denied; and

8        2.  Petitioner's motion for discovery (ECF No. 20) be denied.

9        These findings and recommendations are submitted to the United States District Judge

10  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

11  after being served with these findings and recommendations, any party may file written

12  objections with the court and serve a copy on all parties.  Such a document should be captioned

13  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

14  objections shall be served and filed within fourteen days after service of the objections.  The

15  parties are advised that failure to file objections within the specified time may waive the right to

16  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17  Dated:  June 1, 2023

18

19  KENDALL J. NEWMAN
   UNITED STATES MAGISTRATE JUDGE

20

21  /ward2220.sty.R.dsc

22

23

24

25

26

27

28

14